

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
TRACY R. KIRKHAM, Cal. Bar No. 69913
JOHN D. BOGDANOV, Cal. Bar No. 215830
357 Tehama Street, Second Floor
San Francisco, California 94103
Telephone: 415-788-3030
Facsimile: 415-882-7040
E-Mail: jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Attorneys for Plaintiff TINA CORSE and the Proposed Classes*

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

EDL

TINA CORSE, a California Resident, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

SONY CORPORATION, SONY OPTIARC AMERICA INC., SONY OPTIARC INC., HITACHI, LTD., TEAC CORPORATION, TEAC AMERICA, INC., LG ELECTRONICS, INC., HITACHI-LG DATA STORAGE INC., TOSHIBA SAMSUNG STORAGE TECHNOLOGY CORP., SAMSUNG ELECTRONICS CO. LTD., TOSHIBA CORPORATION, KONINKLIJKE PHILIPS ELECTRONICS N.V., LITE-ON IT CORPORATION, PHILIPS & LITE-ON DIGITAL SOLUTIONS CORPORATION, PHILIPS AND LITE-ON DIGITAL SOLUTIONS USA, INC.,

Defendants.

CV 10 Case No. 1834

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, an indirect purchaser of Optical Disk Drives as defined below, on behalf of herself and all others similarly situated, for her Complaint against all Defendants named herein, demands trial by jury of all claims properly triable thereby, and complains and alleges as follows:

## I. INTRODUCTION

1. This case arises out of a long-running conspiracy extending from at least October 1, 2005 through the present ("the Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing, raising and maintaining prices for Optical Disk Drives sold indirectly to Plaintiff and other indirect purchasers throughout the United States.

2. The Optical Disk Drives and Optical Disk Drive Products that are the subject of this lawsuit include the following formats: CD-ROMs ("CD"), CD recordable/rewritable ("CD-R/RW"), DVD-ROM ("DVD"), DVD-recordable/rewritable ("DVD-R/RW")), Blu-Ray ("BD"), Blu-Ray recordable/rewritable ("BD-R"/"BD-RE") and HD-DVD. During the Class Period, Optical Disk Drives served as one of the primary means for recording and reading music, movies, and other digital data. During this time, defendants' sales of Optical Disk Drives and Optical Disk Drive Products increased substantially and generated billions of dollars in annual revenues.

3. To maintain price stability and increase profitability in the Optical Disk Drive market, Defendants conspired, combined and contracted to fix, raise, maintain and stabilize the price at which Optical Disk Drives and Optical Disk Drive Products were sold in the United States. Defendants fraudulently concealed their anticompetitive conduct from Plaintiff and the Classes in furtherance of the conspiracy.

4. Defendants' anticompetitive conduct in the Optical Disk Drive market is the subject of an ongoing grand jury investigation by the United States Department of Justice ("DOJ"). Regulators in other countries are investigating Defendants' practices as well.

5. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for Optical Disk Drives and Optical Disk Drive Products during the Class Period in excess of the prices they would have paid in a competitive market.

6. Plaintiff brings this action seeking federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to

recover damages under state antitrust and consumer protection laws, common law principles of restitution, disgorgement, unjust enrichment, as well as to recover the costs of suit, including reasonable attorneys fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the price of Optical Disk Drives.

## II. JURISDICTION AND VENUE

7. This action is brought under Section 16 of the Clayton Act (15 U.S.C. §26) to secure equitable relief against Defendants due to their violations of Section 1 of the Sherman Antitrust Act (15 U.S.C. §1), as well as under the antitrust and other laws of the State of California to obtain restitution, recover damages, and to secure other relief against Defendants for violations of those laws.

8. This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. §26), Section 1 of the Sherman Act (15 U.S.C. §1), and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction of the state-law claims asserted in this action under 28 U.S.C. §§ 1332(d) and 1367, in that the matter in controversy exceeds the sum of $5 million exclusive of interest and costs, members of the proposed classes are citizens of states different from Defendants, and certain Defendants are citizens or subjects of foreign states.

9. Venue is proper in this District pursuant to 15 U.S.C. §22 and 28 U.S.C. §1391, because one or more Defendants reside, is licensed to do business, or is found or transacts business in this District, and a substantial part of the events or omissions giving rise to the Plaintiff's claims arose in this District.

10. Defendants conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States, including specifically the laws of the State of California. Defendants' products are sold in the flow of interstate commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

11. Defendants' conspiracy to fix the price of Optical Disk Drives substantially affected commerce throughout the United States and in the State of California because Defendants, directly or through their agents, engaged in activities affecting the United States and the State of California. Defendants have purposefully availed themselves of the laws of the State of California identified herein in connection with their activities relating to the production, marketing, and sale of Optical Disk Drives. Defendants produced, promoted, sold, marketed and/or distributed Optical Disk Drives, thereby purposefully profiting from access to indirect-purchaser consumers in the State of California. Defendants also contracted to supply or obtain goods or revenue related to the business for Optical Disk Drives. As a result of the activities described herein, Defendants:

a. Caused damage to the residents of the State of California;

b. Caused damage in the State of California identified herein by acts or omissions committed outside the State of California by regularly doing or soliciting business in the State of California;

c. Engaged in persistent courses of conduct within the State of California and/or derived substantial revenue from the marketing of Optical Disk Drives or the products in which they are used in the State of California (and services relating to such marketing); and

d. Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in the State of California while regularly doing or soliciting business in the State of California, engaging in other persistent courses of conduct in the State of California, and/or deriving substantial revenue from the marketing of Optical Disk Drives or the products in which they are used in the State of California.

12. The conspiracy described herein affected adversely every person nationwide and in the State of California who indirectly bought Defendants' Optical Disk Drives. Defendants' conspiracy has resulted in an adverse monetary effect on indirect purchasers in the State of California identified herein.

13. Prices of Optical Disk Drives in the State of California can be manipulated by conspirators within California, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of the State of California, companies that break the law will go unpunished. Defendants knew that commerce in the State of California would be adversely affected by implementing their conspiracy.

## III. THE PARTIES

### A. The Plaintiff

14. During the Class Period, Plaintiff Tina Corse, a resident of California, indirectly purchased Optical Disk Drives from one or more Defendants named herein for end use and not for resale.

15. Plaintiff Tina Corse, indirectly purchased Optical Disk Drives when she purchased personal computers, a DVD player and a Blu-Ray player during the Class Period, and was injured as a result of Defendants' illegal conduct.

16. Plaintiff and the members of the Indirect-Purchaser Class were injured in their businesses or property as a result of Defendants' illegal price-fixing agreement because they paid more for Optical Disk Drive Products than they would have absent such illegal conduct.

### B. The Defendants

17. Defendant Sony Corporation is a business entity under the laws of Japan, with a principal place of business at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan. During the Class Period, Defendant Sony Corporation manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

18. Defendant Sony OptiArc Inc. is the parent corporation of Sony OptiArc America, Inc. and is organized under the laws of Japan, with its principal place of business at Gate City Osaki West Tower, 5F, 1-11-1, Osaki, Shinagawa-Ku, TKY 141-0032, Japan. During the Class Period, Defendant Sony OptiArc Inc. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

19. Defendant Sony OptiArc America Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 1730 N. First Street, San Jose, California, 95112.

Sony OptiArc America Inc. is formerly known as Sony NEC OptiArc, Inc. and is a wholly owned subsidiary of Sony OptiArc, Inc. During the Class Period, Defendant Sony OptiArc America Inc. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

20. Defendants Sony Corporation, Sony OptiArc America Inc., and Sony OptiArc, Inc. are referred to collectively herein as "Sony."

21. Defendant TEAC Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-47 Ochiai, Tama-shi, Tokyo, Japan. TEAC Corporation controls TEAC America Inc. During the Class Period, Defendant TEAC Corporation manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

22. Defendant TEAC America, Inc. is a business entity organized under the laws of California, with its principal place of business at 7733 Telegraph Rd., Montebello, California. TEAC America Inc. is a wholly owned subsidiary of Defendant TEAC Corporation. During the Class Period, Defendant TEAC America Inc. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

23. Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 4-6 Kanda-Surugadai Chiyoda-ku, Tokyo, Japan. Hitachi Ltd. is one of the parent corporations of a jointly-owned subsidiary, Hitachi-LG Storage Inc. During the Class Period, Defendant Hitachi Ltd. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

24. Defendant LG Electronics, Inc. is a business entity organized under the laws of Korea, with its principal place of business at 26/F Twin Tower South 20, Yoido-Dong, Youngdungpo-Gu, Seoul, SEO 150875, Republic of Korea. LG Electronics Inc. is the one of the parent corporations of a jointly-owned subsidiary, Hitachi-LG Storage Inc. During the Class Period, Defendant LG Electronics Inc. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

25. Defendant Hitachi-LG Data Storage Inc. is a business entity organized under the laws of Japan, with its principal place of business at 4F MSC Center Building, 22-23 Kaigan 3-chome, Tokyo Japan. Hitachi-LG Storage Inc. is joint venture formed in 2001, and is 51% owned by Hitachi Ltd. and 49% owned by LG Electronics Inc. During the Class Period, Defendant Hitachi-LG Data Storage Inc. manufactured, sold and/or distributed Optical drive products throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

26. Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minat-ku, Tokyo, 105-8001, Japan. Toshiba Corp. is one of the parent corporations of a jointly-owned subsidiary, Toshiba Samsung Storage Technology Corp. During the Class Period, Defendant Toshiba Corporation manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

27. Defendant Samsung Electronics Co, Ltd. is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. Samsung Electronics Co., Ltd. is one of the parent corporations of a jointly-owned subsidiary, Toshiba Samsung Storage Technology Corp. During the Class Period, Defendant Samsung Electronics Co, Ltd. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

28. Defendant Toshiba Samsung Storage Technology Corp. is a business entity organized under the laws of Japan, with its principal place of business at Solid Square 580, Horikawacho, Saiwai-ku, Kawasaki, KNG 212-0013 Japan. Toshiba Samsung Storage Technology Corp. is a joint venture established in 2004, and is 51% owned by Toshiba Corporation and 49% owned by Samsung Electronics Co. During the Class Period, Defendant Toshiba Samsung Storage Technology Corp. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

29. Defendant Koninklijke Philips Electronics N.V. ("Philips") is a business entity organized under the laws of The Netherlands, with its principal place of business at Groenewoudseweg 1, Einhoven 5621 BA, The Netherlands. Philips controls itself and jointly owns

other entities such as Philips & Lite-On Digital Solutions Corporation. During the Class Period, Defendant Philips manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

30. Defendant Lite-On IT Corporation ("Lite-On") is a business entity organized under the laws of Taiwan, with its principal place of business at 12-15F, Jui Kuand Road, Taipei City, TAP, 11492, Taiwan. Lite-On controls itself and jointly owns other entities such as Philips & Lite-On Digital Solutions Corporation. During the Class Period, Defendant Lite-On manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

31. Defendant Philips & Lite-On Digital Solutions Corporation is a business entity organized under the laws of Taiwan, with its principal place of business at 16F, 392, Jui Kuang Road, Taipei City, TAP, 11492, Taiwan. Philips & Lite-On Digital Solutions Corporation is a joint venture between Philips and Lite-On established in 2007. During the Class Period, Defendant Philips & Lite-On Digital Solutions Corporation manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

32. Defendant Philips & Lite-On Digital Solutions USA, Inc. is a business entity organized under the laws of Delaware, with its principal place of business at 42000 Christy Street, Fremont, California, 94538. Philips & Lite-On Digital Solutions USA Inc. is a joint venture between Philips and Lite-On established in 2007. During the Class Period, Defendant Philips & Lite-On Digital Solutions USA Inc. manufactured, sold and/or distributed Optical Disk Drives throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

**C. <u>Co-Conspirators</u>**

33. Various persons and entities, whose identities are at this time unknown to Plaintiff, participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. When Plaintiff learns the identities of such co-conspirators, Plaintiff will seek leave to amend this Complaint to add such co-conspirators as Defendants.

34. The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or

representatives while actively engaged in the management of each defendant's business or affairs.

35. Each Defendant named herein acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United States agent for Optical Disk Drives made by its parent company.

## IV. FACTUAL ALLEGATIONS

### A. Nature of Commerce.

36. During the Class Period, Defendants' annual sales of Optical Disk Drives have been in the billions of dollars.

37. In 2008, Samsung estimated that 313 million Optical Disk Drives were sold for personal computers annually, and that more than 200 million Optical Disk Drives were sold annually for all other applications, including CD and DVD players and recorders, camcorders, game consoles and automotive audio and video units.

### B. Optical Disk Drive Technology and Industry Background.

38. Optical disks contain microscopic pits for storing data. These pits are made from a crystalline metal alloy and typically are pressed into the disc in a spiral arrangement, beginning at the disk's center. An Optical Disk Drive will spin an inserted disk, while a lens inside the device guides a semiconductor laser beam to scan the disk's surface, and a photodiode detects the light reflected from the disk's bumps and pits. The photodiode reads the light's reflection as a binary code, a series of ones and zeros that can be translated by a computer to usable data. As the laser strikes the pits, the photodiode detects changes in the intensity of the beams and translates those beams into electrical signals. Disks with a greater number of pits can store more data. Additional layers also can be added to disks to increase storage capacity.

39. The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and 0.15 micrometers on Blu-Ray disks. Optical Disk Drives must have lasers of different wavelengths to read the various disk formats. For example, Blu-Ray disk players use a shorter wavelength laser, blue-violet, to read disks.

40. Optical Disk Drives also can be equipped with technology to write and/or re-write information on certain types of disks. Optical Disc Drives that can write or re-write data are commonly referred to as "burners" or "writers." Different types of Optical Disc Drives contain various speeds for accessing and writing data.

41. When a recordable disk such as a CD-R, DVD-R or Blu-Ray-R is inserted into an appropriate Optical Disc Drive, the unit's laser is used to selectively heat parts of the organic photosensitive dye layer. The reflective properties of the disk's surface change as the disk is exposed to the laser beam, causing the photodiode to recognize these surface changes as bumps and pits and to read the new information on the disk.

42. Sony and Philips jointly invented audio CDs and the initial Optical Disk Drives that read them. In 1972, Philips announced that it had invented a technique for storing audio recordings on small diameter optical disks. Concurrently, Sony was developing techniques for storing audio recordings on larger diameter optical disks while focusing on error correction techniques. In 1978, Sony and Philips agreed on a single disk format and error correction method. They introduced CDs and CD players to the public in 1982. Since the 1980s, several companies adopted the standards established by Sony and Philips to create other Optical Disk Drive technologies.

43. After Sony and Philips established standards for creating CDs and Optical Disk Drives to read them, CD-ROM drives began to penetrate the computer market. Optical Disk Drives have been commonly used in computers since the 1990s, when CD-ROM drives became affordable for the average consumer. Manufacturers subsequently developed Optical Disk Drive technologies including DVD and Blu-Ray that can read, write and store greater amounts of data than CD-ROMs.

44. Today, Optical Disk Drives are standard components of almost every computer used in the United States. Due to the increasing popularity of personal and laptop computers, Defendants manufacture, distribute and sell hundreds of millions of Optical Disk Drives each year, generating billions of dollars in annual revenues. Worldwide Optical Disk Drive shipments reached over 300 million in 2007, and generated over $45 billion in sales revenue between 2004

and 2008.

C. **Opportunity for Collusion.**

45. At all times prior to and during the Class Period, the Optical Disk Drive industry exhibited certain characteristics that facilitate a conspiracy among industry participants, including market concentration, ease of information sharing, interrelated business relationships, significant barriers to entry and standardization of Optical Disk Drive Products.

**Market Concentration and Joint Ventures.**

46. According to published reports, during the Class Period, the Optical Disk Drive industry has been dominated by Defendants and their co-conspirators. During the Class Period, Defendant Philips & Lite-On Digital Solutions Corporation had a 30% market share. The joint venture between Defendants Hitachi and LG Electronics, Defendant Hitachi-LG Data Storage Inc., had a 27% market share. The joint venture between Defendants Toshiba and Samsung, Defendant Toshiba Samsung Storage Technology Corp., had a 20% market share. And, Defendant Sony Optiarc America, Inc. had a 17% market share. Together these Defendants control over 90% of the global market for Optical Disk Drives.

47. In October 2000, Defendants Hitachi and LG Electronics joined together to form Defendant Hitachi-LG Data Storage Inc., a joint venture company for the development, design and marketing of Optical Disk Drives.

48. In April 2003, Defendants Samsung Electronics and Toshiba Corporation signed a memorandum of understanding. In January 2004, these Defendants concluded an agreement to integrate their Optical Disk Drive businesses into a single entity. In April 2004, Defendant Toshiba Samsung Storage Technology Corp. was launched to develop, market and design Optical Disk Drives.

49. In April 2006, Defendant Sony Corporation and NEC Corporation joined forces to create Sony NEC Optiarc Inc. At the formation of the joint venture, Sony had a 55% stake. In September 2008, Sony purchased NEC Corp.'s interest in the joint venture, and renamed it Sony Optiarc Inc., a Defendant herein.

50. In 2006, Defendant Lite-On IT Corporation acquired BenQ's Optical Disk Drive business to become the second-largest Optical Disk Drive manufacturer in the world. The business was renamed Philips & Lite-On Digital Solutions Corporation, a Defendant herein.

51. The joint ventures of each of these Defendants allowed them to share and have access to each of their parent companies' patents and technologies without the need to pay royalties. The formation of these joint ventures was the product of the exchange of information, and facilitates an ongoing antitrust conspiracy between Defendants.

52. The mutually beneficial nature of the business relationships between certain Defendants not only afforded them the opportunity to conspire, but also created a financial incentive for them to do so. According to a spokesman for Defendant Sony Corporation, Defendant Sony NEC Optiarc, Inc. came into existence because, "There was a feeling that those two complementary strengths [Sony Corporation and NEC Corporation] would make more sense in a joint venture than competing against each other."

**Barriers to Entry.**

53. There are significant manufacturing and technological barriers to entry into the Optical Disk Drive industry. Companies must spend hundreds of millions of dollars in research and development, licensing and manufacturing of products to compete in the Optical Disk Drive industry. Defendants' ownership and control over Optical Disk Drive technology and market share has enabled Defendants to dictate the terms and costs by which other companies can enter the market. These barriers to entry have created significant difficulty for smaller manufacturers of Optical Disk Drives to compete with Defendants and overcome the effects of economies of scale. As a result, the financial structure of the Optical Disk Drive industry has allowed Defendants to implement their conspiracy to restrict competition and fix, maintain and stabilize prices for Optical Disk Drives at supra-competitive levels without losing market share.

54. Price-fixing and market allocation are easier to attain within a highly concentrated, fungible market for which adequate substitutes do not exist. All of these factors facilitate the implementation and maintenance of an antitrust conspiracy such as that perpetrated by Defendants and alleged herein. The facts do not support a finding of conscious parallelism. Instead, it is

evident from the facts that Defendants communicated and conspired to the detriment of Optical Disk Drive consumers.

**Trade Associations and Business Organizations.**

55. During the Class Period, Defendants belonged to trade and business organizations that focused on Optical Disk Drives and related industries. These organizations include the DVD Forum, the Optical Storage Technology Association ("OSTA"), and the International Symposium of Optical Memory ("ISOM").

56. The DVD Forum is a global group of hardware manufacturers, software firms and content providers. It was established in 1997. The DVD Forum is responsible for the licensing and distribution of DVD products. The DVD Forum states that its "purpose is to exchange and disseminate ideas and information about the DVD Format and its technical capabilities, improvements and innovations." Defendants Hitachi, LG Electronics, Lite-On, Philips, Samsung, Sony and Toshiba are members of the DVD Forum.

57. Defendants Hitachi, LG Electronics, Samsung, Sony and Toshiba are also members of the DVD Forum's Steering Committee. The Steering Committee's last meeting took place on September 10, 2009, at the Universal Hilton Hotel in Los Angeles, California. During that meeting, Defendants and their co-conspirators communicated with each other about the price-fixing conspiracy and agreed to continue to fix, maintain, and stabilize prices for Optical Disk Drives.

58. Defendants LG Electronics and Sony Corporation are members of OSTA. According to OSTA's website, the organization was "incorporated as an international trade association in 1992 to promote the use of writable optical technologies and products for storage of computer data. The organization's membership includes optical product manufacturers and resellers from three continents, representing more than 85 percent of worldwide writable optical product shipments. They work to shape the future of the industry through regular meetings of CD/DVD, file interchange, market development, magneto-optical and planning committees."

59. The most recent meeting of the OSTA took place on March 16-18, 2009 at the Pacific Business Centers in Cupertino, California. Representatives, agents or employees of all

Defendants were present at that meeting. During that meeting, Defendants were able to and did meet and communicate with each other regarding the price-fixing conspiracy. This meeting of the OSTA enabled Defendants to exchange sensitive pricing information and ensured that Defendants charged the same or similar prices for Optical Disk Drives.

60. The Blu-Ray Disc Association is a worldwide group established in 2005 to promote the Blu-Ray format and associated products, to establish standardized formats, and to cross-license technology. Defendants Hitachi, LG Electronics, Philips, Samsung, Sony and Toshiba are members of the Blu-Ray Disc Association.

61. Defendants Sony, LG Electronics, Samsung and Hitachi participated in the first meeting of Blu-Ray patent owners in Los Angeles, California on July 6-7, 2006. The stated purpose of this meeting was to establish joint licensing agreements for Optical Disk Drive technologies between the participants.

62. The International Consumer Electronics Show is the world's largest consumer electronics show. The 2010 International Consumer Electronics Show was held on January 7-10, 2010, at the Venetian Hotel in Las Vegas, Nevada. During that event, Defendants and their co-conspirators communicated with each other about the price-fixing conspiracy.

63. Defendants and their representatives, agents and employees attended multiple meetings and conferences organized by these and other industry groups both before and during the Class Period, affording Defendants the opportunity to meet, discuss and agree upon their pricing of Optical Disk Drives.

64. Defendants' use of industry associations to further their conspiracy with respect to the Optical Disk Drive market is consistent with their prior conduct with respect to price-fixing conspiracies for other markets. In particular, Defendants and their affiliates and co-conspirators participated in trade associations and attended industry meetings to further their conspiracies to fix, maintain and stabilize prices for dynamic random access memory ("DRAM"), static random access memory ("SRAM"), flash memory, thin film transistor liquid crystal display ("TFT-LCDs"), and cathode-ray tubes ("CRTs").

**Standardization of Optical Disk Drives.**

65. Since its inception in the 1970s, the Optical Disk Drive industry has been typified by standardization of disks (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven by industry participants and a variety of industry-related organizations such as ECMA International, the International Standardization Organization ("ISO") and the International Electrotechnical Commission ("IEC"). These organization and their members are dedicated to "standardizing the use of information communication technology and consumer electronics."

66. The Optical Disk Drive industry is also subject to patents and intellectual property rights which require adoption of standardized products specifications.

67. The standardization of Optical Disk Drives and Optical Disk Drive Products has enabled Defendants to implement, enforce and oversee their anticompetitive conspiracy to fix the price of Optical Disk Drives and Optical Disk Drive Products. As a result of this standardization, Optical Disk Drives and Optical Disk Drive Products have become commodity products. Consumers make purchasing decisions for these products based largely, if not exclusively, on price.

**D. Collusion on Prices for Optical Disk Drives.**

68. Faced with shrinking profits, Defendants conspired to fix, raise, maintain and stabilize the price of Optical Disk Drives and Optical Disc Drive Products in the United States at artificially inflated and anticompetitive levels to preserve and increase their revenues.

69. Defendants have been the subject of government investigations for their cartel activity in recent years. For example, Defendant Samsung admitted guilt and paid a $300 million fine following an investigation by the U.S. Department of Justice ("DOJ") into price-fixing of DRAM computer chips.

70. The DOJ is currently investigating Defendants Samsung, LG Electronics, Toshiba, and Hitachi, among others, concerning collusion among manufacturers of TFT-LCDs. The ongoing TFT-LCD criminal investigation has resulted in hundreds of millions of dollars in criminal penalties. LG Electronics and Hitachi have both pled guilty to price fixing in the TFT-LCD market and have been fined $400 million and $31 million, respectively.

71. The European Union ("EU") has also investigated these same companies for anticompetitive practices in the TFT-LCD market. In addition, in November 2007, the EU fined Defendant Sony and various related entities and the Hitachi Maxell Limited joint venture $110 million for fixing the prices of professional videotapes sold in Europe between 1999 and 2002. The European Commission also fined Hitachi and Toshiba for their roles in a conspiracy to control prices and allocate market shares in the market for gas-insulated switchgear between 1988 and 2004.

72. On October 7, 2009, the Japan Fair Trade Commission issued a cease-and-desist order and levied $37.4 million in fines against five companies, including Korean affiliates of Defendants Samsung, LG Electronics and Philips for their alleged participation in a price-fixing cartel for CRTs.

73. The pattern of illegal conduct by Defendants Hitachi, LG Electronics, Samsung, Philips and Sony in a wide variety of product markets is illustrative of Defendants' respective corporate cultures. Those cultures encourage collusion with competitors to create additional profits for their companies at the expense of consumers.

74. The DOJ has commenced a grand jury investigation into anticompetitive conduct in the Optical Disk Drive industry, involving several Defendants named herein. The grand jury investigation implies that DOJ attorneys have concluded that sufficient evidence exists to believe a criminal violation of the antitrust laws has occurred. On October 26, 2009, Defendants Sony Optiarc America, Inc., TSST and Hitachi-LG Data Storage, Inc. confirmed that they received subpoenas from the DOJ in connection with a criminal antitrust investigation into price-fixing, bid-rigging and allocation of markets for Optical Disk Drives. According to various news reports, the EU and Singaporean antitrust authorities are undertaking similar investigations.

75. On October 27, 2009, a spokesperson for the DOJ confirmed that, "[t]he Antitrust Division is investigating the possibility of anticompetitive practices in the Optical Disc Drive industry."

76. In a Form 6-K filed with the United States Securities and Exchange Commission on November 16, 2009, Defendant Hitachi disclosed the following:

> In June 2009, a subsidiary in Japan received a grand jury subpoena in connection with an investigation conducted by the Antitrust Division of the U.S. Department of Justice and received requests for information from the European Commission, both in respect of alleged antitrust violations relating to optical disk drives. Also in June 2009, the Competition Commission of Singapore began an investigation of a subsidiary in Korea, also in respect of alleged antitrust violations relating to optical disk drives. Relevant authorities in the markets in which Hitachi operates continue to investigate Hitachi and may initiate similar investigations in the future. These investigations may result in significant penalties in multiple jurisdictions, and private parties may bring civil actions against Hitachi seeking compensation for damages resulting from the relevant violations. Such substantial legal liability or regulatory action could have a material adverse effect on Hitachi's business, results of operations, financial condition, cash flows, reputation and credibility.

77. Defendant Philips' annual report for 2009 revealed that it and PLDS also are the subject of the same criminal investigations. The report stated:

> On October 27, 2009, the Antitrust Division of the United States Department of Justice confirmed that it had initiated an investigation into possible anticompetitive practices in the Optical Disc Drive (ODD) industry. Philips Lite-On Digital Solutions Corp. (PLDS), a joint venture owned by the Company and Lite-On IT Corporation, as an ODD market participant, is included in this investigation. PLDS is also subject to similar investigations outside the US relating to the ODD market. PLDS and Philips intend to cooperate with the authorities in these investigations. [. . . ] These matters are in their initial stages and due to the considerable uncertainty associated with these matters, on the basis of current knowledge, the Company has concluded that potential losses cannot be reliably estimated with respect to these matters. An adverse final resolution of these investigations and litigation could have a materially adverse effect on the Company's consolidated financial position, results of operations and cash flows.

78. On October 28, 2009, it was announced that Defendants Sony and Philips were fined by the Taiwan Fair Trade Commission for their anticompetitive business practices in connection with their abuse of monopoly power in the licensing of CD-R technology.

**E. <u>Effects of Defendants' Antitrust Violations.</u>**

79. The ongoing contract, combination or conspiracy described above has had and continues to have at least the following effects:

a. Price competition in the sale of Optical Disk Drives by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

b. Prices for Optical Disk Drives sold by Defendants have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

c. Indirect purchasers of Optical Disk Drives from Defendants have been deprived of the benefit of free and open competition in the purchase of Optical Disk Drives and Optical Disk Drive Products.

80. As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and other members of the proposed classes have been injured in their businesses and property in that they paid more for Optical Disk Drives and Optical Disk Drive Products than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

## V. THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS

81. Defendants' conspiracy to raise, fix or maintain the price of Optical Disk Drives at artificial levels resulted in harm to Plaintiff and the proposed classes because it resulted in them paying higher prices for Optical Disk Drive Products than they would have in the absence of Defendants' conspiracy. The entire overcharge for Optical Disk Drives at issue was passed on to Plaintiff and members of proposed classes.

82. Optical Disk Drives are commodity products, with functionally equivalent products available from Defendants, which manufacture Optical Disk Drives pursuant to standard specifications.

83. The Optical Disk Drive market is dominated by a handful of leading manufacturers, namely, Defendants in this case.

84. An Optical Disk Drive is purchased by a consumer as a stand-alone device or as a substantial part of an Optical Disk Drive Product. When an Optical Disk Drive is purchased by consumers as a stand-alone device, the device itself is directly traceable to the specific manufacturing Defendant. When an Optical Disk Drive is purchased by a consumer as part of an

Optical Disk Drive Product, it is a distinct, physically-discrete hardware element of the end-use product and is identifiable by a specific, discrete part or model number that permits tracing. Optical Disk Drives are identifiable and traceable throughout the chain of the distribution to the end user. They do not undergo any alterations as they move through the chain of distribution.

85. The indirect-purchaser buys an Optical Disk Drive through one of two distribution chains, either from the direct purchaser OEM, or through a reseller such as a retailer. Thus, an Optical Disk Drive follows a traceable physical chain from Defendants to the OEMs, to the purchasers of Optical Disk Drive Products. Tracing can help show that changes in the prices paid by direct purchasers of Optical Disk Drives affect prices paid by indirect-purchasers of the Optical Disk Drives themselves, or Optical Disk Drive Products.

86. The OEM and the retail markets of Optical Disk Drives and Optical Disk Drive Products are subject to vigorous price competition. The direct purchaser OEMs and retailers have very thin net margins. They are therefore at the mercy of their component costs, such that increases in the price of Optical Disk Drives and Optical Disk Drive Products lead to quick, corresponding price increases at the OEM and retail levels for stand-alone Optical Disk Drives and Optical Disk Drive Products.

87. As a result, the inflated prices of Optical Disk Drives resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiff and the other members of the proposed classes by direct-purchaser manufacturers, distributors and retailers.

88. Optical Disk Drives makes up a substantial component of the cost of Optical Disk Drive Products. The retail price of an Optical Disk Drive Product is determined in substantial part by the cost of the Optical Disk Drive it contains.

89. In retailing, it is common to use a "markup rule." The retail price is set as the wholesale cost plus a percentage markup designed to recover non-product costs and to provide a profit. This system guarantees that increases in costs to the retailer will be passed on to end buyers.

90. Unlawful overcharges for a fixed-price component result in higher prices for products containing that price-fixed component.

91. The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. As Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his treatise, FEDERAL ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS PRACTICE (1994) at 624:

> A monopoly overcharge at the top of a distribution chain generally results in higher prices at every level below. For example if production of aluminum is monopolized or cartelized, fabricators of aluminum cookware will pay higher prices for aluminum. In most cases they will absorb part of these increased costs themselves and pass part along to cookware wholesalers. The wholesalers will charge higher prices to the retail stores, and the stores will do it once again to retail consumers. Every person at every stage in the chain likely will be poorer as a result of the monopoly price at the top.
>
> Theoretically, one can calculate the percentage of any overcharge that a firm at one distributional level will pass on to those at the next level.

92. Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."

93. As Professor Jeffrey K. McKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers… Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.

94. Economic and legal literature recognizes that the more pricing decisions are based on cost, the easer it is to determine the pass-through rate. The directness of affected costs refers to whether an overcharge affects a direct (*i.e.* variable) cost or an indirect (*i.e.*, overhead) cost. Overcharges will be passed-through sooner and at a higher rate if the overcharge affects direct

costs. Here Optical Disk Drives are a direct (and substantial) cost of Optical Disk Drive Products.

95. Other factors that lead to the pass-through of overcharges include: (a) whether price changes are frequent; (b) the duration of the anti-competitive overcharge; (c) whether pricing decisions are based on cost; (d) whether the overcharge affects variable, as opposed to overhead, costs; (e) whether the resellers' production technology is uniform; (f) whether the reseller supply curve exhibits a high degree of elasticity; and (g) whether the demand of the resellers is inelastic. All of these factors were present in the Optical Disk Drive market during the Class Period. The precise amount of such an impact on the prices of Optical Disk Drives and Optical Disk Drive Products can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge passed-through the chain of distribution.

96. Plaintiff and other indirect purchasers have been forced to pay supracompetitive prices for Optical Disk Drives and Optical Disk Drive Products. These inflated prices have been passed on to them by direct purchaser manufacturers, distributors and retailers. Those overcharges have unjustly enriched Defendants.

## VI. CLASS ACTION ALLEGATIONS

97. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of all members of the following Class (the "Nationwide Class"):

> All natural-person citizens and entities residing in the United States that, from October 1, 2005 through the present, purchased in the United States, Optical Disk Drives indirectly from the Defendants for their own use and not for resale. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant, any entity in which any Defendant has a controlling interest and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

98. Plaintiff also brings this action on her own behalf and as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, and/or respective California statute, on behalf of all members of the following class:

All persons and entities in California who indirectly purchased in California Optical Disk Drives manufactured and/or sold by one or more of the Defendants for their own use and not for resale during the Class Period. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant, any entity in which any Defendant has a controlling interest and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

99. Plaintiff does not know the exact size of the Classes at the present time. However, Plaintiff believes that due to the nature of the trade and commerce involved, there are at least thousands in the separate California state class, and hundreds of thousands of class members geographically dispersed throughout the United States, such that joinder of all class members would be impracticable.

100. Plaintiff's claims are typical of the claims of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Classes. Plaintiff has retained competent counsel experienced in class action and complex antitrust and consumer protection litigation.

101. Common questions of law and fact exist, including:

a. Whether Defendants and their Co-Conspirators engaged in a contract, combination or conspiracy among themselves to fix, raise, maintain or stabilize the process of, or allocate the market of Optical Disk Drives sold in the United States;

b. The duration and extent of Defendants' contract, combination or conspiracy;

c. Whether the Defendants and their Co-Conspirators were participants in the contracts, combinations or conspiracies alleged herein;

d. Whether Defendants and their Co-Conspirators engaged in conduct that

violated Section 1 of the Sherman act;

e. Whether Defendants and their Co-Conspirators engaged in conduct that violated Sections 16720 and 17200 of the California Business and Professions Code;

f. Whether the anticompetitive conduct of the Defendants and their Co-Conspirators caused prices of Optical Disk Drives to be artificially inflated to non-competitive levels;

g. Whether the Defendants and their Co-Conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of the members of the Classes;

h. Whether Defendants and their Co-Conspirators fraudulently concealed the existence of their unlawful conduct;

i. Whether Plaintiff and the Classes are entitled to injunctive relief; and

j. Whether Plaintiff and other members of the California Indirect Purchaser Class were injured by the conduct of Defendants and, if so, the appropriate measure of damages for the Class.

102. These and other questions of law and fact are common to the Classes and predominate over any questions affecting only individual class members, including legal and factual issues relating to liability, damages and restitution.

103. Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

a. It will avoid a multiplicity of suits and consequent burden on the courts and Defendants;

b. It would be virtually impossible for all members of the Classes to intervene as parties-plaintiff in this action;

c. It will allow numerous individuals with claims too small to adjudicate on an individual basis because of the prohibitive cost of this litigation, to obtain redress for their economic injuries;

d. It is appropriate for treatment on a fluid recovery basis, which obviates any manageability problems; and

e. It will provide court oversight of the claims process, once Defendants' liability is adjudicated.

104. Plaintiff will fairly and adequately protect the interests of the Nationwide Class and the California Indirect Purchaser Class in that the named Plaintiff has no interests antagonistic to the interests of the other members of the Classes and has retained counsel competent and experienced in the prosecution of class actions and antitrust cases to represent herself and the Classes.

105. This case is also appropriate for certification as a class action because Defendants have acted and refused to act on grounds generally applicable to the Nationwide Class, so that final injunctive relief will be appropriate with respect to the Nationwide Class as a whole.

106. The claims asserted herein are also appropriate for class certification under the laws of the State of California under which claims are asserted.

## VII. ACTIVE CONCEALMENT

107. Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their prices, including repeatedly and falsely attributing price increases to increased demand, increased costs, product shortages and lack of manufacturing capacity, which justifications were made to the general public in press releases, comments to the press, annual reports and other public filings.

108. Defendants and their co-conspirators concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until October 26, 2009.

109. Defendants also took affirmative acts to conceal the conspiracy including issuing public statements falsely stating the Optical Disk Drives were competitively priced. For instance, on June 4, 2007, Defendant Sony issued a press release falsely stating that its Blu-Ray disk player "gives a broader consumer segment the opportunity to experience the exceptional quality of Blu-ray format at a competitive price."

110. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII. VIOLATIONS ALLEGED

### First Claim for Relief
### (Violation of Section 1 of the Sherman Act)

111. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

112. Beginning at a time currently unknown to Plaintiff, but at least as early as October 1, 2005, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize and peg prices for Optical Disk Drives and Optical Disk Drive Products in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

113. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above, and the following, among others:

a. Fixing, raising, stabilizing and pegging the price of Optical Disk Drives; and

b. Allocating among themselves and collusively reducing the production of Optical Disk Drives.

114. The combination and conspiracy alleged herein has had the following effects, among others:

a. Price competition in the sale of Optical Disk Drives has been restrained,

suppressed and/or eliminated in the United States;

b. Prices for Optical Disk Drives sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

c. Those who purchased Optical Disk Drives directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

115. Plaintiff and other Nationwide Class members have been injured and will continue to be injured in their businesses and property by paying more for Optical Disk Drives purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for Optical Disk Drive Products, as a result of higher prices paid for Optical Disk Drives by the direct purchasers of such Optical Disk Drives.

116. Plaintiff and the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**Second Claim for Relief**
**(Unjust Enrichment and Disgorgement of Profits)**

117. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

118. Defendants have been unjustly enriched through overpayments by Plaintiff and class members and the resulting profits.

119. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and class members in the State of California.

120. Plaintiff and class members in the State of California seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which plaintiff and class members may seek restitution.

**Third Claim for Relief**
**(Violation of the California Cartwright Act)**

121. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

a. Defendants' contract, combination, trust or conspiracy was entered in, carried out, effectuated and perfected mainly within the State of California, and Defendants' conduct within California injured all members of the Class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of the California Indirect Purchaser Class.

b. Beginning at a time currently unknown but at least as early as October 1, 2005, and continuing thereafter at least up to the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, Optical Disk Drives and Optical Disk Drive Products at supracompetitive levels.

c. The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, Optical Disk Drives and Optical Disk Drive Products.

d. For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of Optical Disk Drives; and (2) allocating among

themselves the production of Optical Disk Drives.

e. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of Optical Disk Drives and Optical Disk Drive Products has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Optical Disk Drives and Optical Disk Drive Products sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Optical Disk Drives and Optical Disk Drive Products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

f. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the California Indirect Purchaser Class have been injured in their business and property in that they paid more for Optical Disk Drives and Optical Disk Drive Products than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and the California Indirect Purchaser Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**Fourth Claim for Relief**
**(Violation of the California Unfair Competition Law)**

122. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

a. Defendants' business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California, and Defendants' conduct injured all members of the California Indirect Purchaser Class. Therefore, this claim for relief under California law is

brought on behalf of the California Indirect Purchaser Class.

b. Beginning on a date unknown to Plaintiff but at least as early as October 1, 2005, and continuing thereafter at least up through the present, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

c. This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

d. Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

e. Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

f. Defendants' acts or practices are unfair to consumers of Optical Disk Drives and Optical Disk Drive Products in the State of California within the meaning of Section 17200, California Business and Professions Code.

g. Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and professions Code.

h. Plaintiff and each of the California Indirect Purchaser Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business acts or practices.

i. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

j. The unlawful and unfair business practices of defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the California Class to pay supracompetitive and artificially-inflated prices for Optical Disk Drives. Plaintiff and the members of the California Indirect Purchaser Class suffered injury in fact and lost money or property as a result of such unfair competition.

k. The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

l. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the California Indirect Purchaser Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code Sections 17203 and 17204.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court determine that the claims alleged herein under the Sherman Act and the California Cartwright Act and Unfair Competition Law, may be maintained as class actions

under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the California state class action laws.

B. That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

1. A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief herein;

2. Acts of unjust enrichment as set forth in the Second Claim for Relief herein;

3. An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the antitrust laws of California, identified in the Third, Claim for Relief herein; and

4. Violations of the California Unfair Competition Law identified in the Fourth Claim for Relief herein.

C. That Plaintiff and the Classes alleged herein recover damages, to the maximum extent allowed under such laws as provided by the antitrust laws of California, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount to be trebled to the extent permitted by such laws;

D. That Plaintiff and the Classes alleged herein obtain equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of their illegal business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

E. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F. That the Court enter an order of divestiture requiring defendants to rescind and/or dissolve the cooperation agreements, joint ventures and/or cross-license agreements alleged herein between and among them used to facilitate the conspiracy alleged herein;

G. That Plaintiff and members of the Classes be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

H. That Plaintiff and members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

I. That Plaintiff and members of the Classes recover their costs of suit, including a reasonable attorney's fee, as provided by law; and

J. That Plaintiff and members of the Classes have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: April 28, 2010

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
TRACY R. KIRKHAM, Cal. Bar No. 69913
JOHN D. BOGDANOV, Cal. Bar No. 215830
357 Tehama Street, Second Floor
San Francisco, California 94103
Telephone: 415-788-3030
Facsimile: 415-882-7040
E-Mail: jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Attorneys for Plaintiff TINA CORSE and the Proposed Classes*

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: April 28, 2010

COOPER & KIRKHAM, P.C.
JOSEF D. COOPER, Cal. Bar No. 53015
TRACY R. KIRKHAM, Cal. Bar No. 69913
JOHN D. BOGDANOV, Cal. Bar No. 215830
357 Tehama Street, Second Floor
San Francisco, California 94103
Telephone: 415-788-3030
Facsimile: 415-882-7040
E-Mail: jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Attorneys for Plaintiff TINA CORSE and the Proposed Classes*